## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 20 2019, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas J. Gaunt
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General

David E. Corey
Deputy Attorney General

Matthew J. Goldsmith
Certified Legal Intern
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Whitney Bishop,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Review Board of the Indiana Department of Workforce Development, and Extra Help, Inc.,<br><br>*Appellees-Respondents* | September 20, 2019<br><br>Court of Appeals Case No. 18A-EX-1605<br><br>Appeal from the Review Board of the Indiana Department of Workforce Development<br><br>The Honorable Steven F. Bier, Chairperson<br><br>The Honorable Lawrence A. Dailey, Member<br><br>The Honorable Suzanne Manning, Administrative Law Judge<br><br>Case No. 18-R-529 |

**Vaidik, Chief Judge.**

# Case Summary

Whitney Bishop appeals a decision of the Review Board of the Indiana Department of Workforce Development ("Review Board"). We reverse the Review Board's decision and remand for further proceedings consistent with this opinion.

# Facts and Procedural History

Bishop[1] was employed by Carrier from May 19, 2016, to January 14, 2018, when she and many others were laid off. From July 22, 2017, until she was laid off, Bishop was on medical disability at Carrier due to injuries she sustained in a car accident while pregnant. Bishop gave birth on February 1, 2018.

In late January or early February, Bishop filed for unemployment benefits due to her layoff from Carrier. Tr. pp. 9-10, 59. Although it is not in the record, Bishop apparently received a letter from the Indiana Department of Workforce Development ("DWD") stating that her application for unemployment benefits due to her January 2018 layoff from Carrier was being denied because "she

---

[1] Bishop has waived any confidentiality by using her name in documents filed with this Court. *See Advanced Corr. Healthcare, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 27 N.E.3d 322, 324 n.1 (Ind. Ct. App. 2015).

walked off quitting without reason, from a company called [Staffing Agency[2]] the same month." Appellant's Br. p. 5; *see also* Tr. pp. 11, 18. According to Bishop, however, she had never worked for Staffing Agency, and the denial letter was the first time she had ever heard of it. *See* Tr. p. 11 ("Because when I filed [for unemployment with Carrier] and the letter came back, I'm like, what? I didn't know nothing about [Staffing Agency] until I filed for unemployment. I wasn't aware of nobody out there working . . . under my name until I filed.").

[4] On Friday, March 2, Bishop called the Indianapolis Metropolitan Police Department to report that her identity had been stolen and that someone had been working at Staffing Agency using her information. Ex. pp. 8-10. Then on Monday, March 5, Bishop went to Staffing Agency to inquire about the person who had been using her identity. Staffing Agency told Bishop that the person had given the address of 2210 White Oaks Drive in Indianapolis when they applied, and it gave her the following letter:

> Whitney Bishop was in our office today, inquiring about her identity theft. We are unable to provide information due to this being a criminal investigation. We have provided her with homeland security contact information.

Ex. p. 12; *see also id.* at 11 (name and contact information of special agent with the United States Department of Homeland Security).

---

[2] Staffing Agency is a "Professional Employment Organization," which provides staffing and payroll services to other businesses. Tr. pp. 12-13.

Also on March 5, a DWD claims investigator issued a Determination of Eligibility regarding a claim by "Whitney Bishop" for unemployment benefits based on employment with Staffing Agency:

> Circumstances of Case
>
> The employer states the claimant quit. The claimant denies the allegation. The employer has provided information that supports the allegation.
>
> Conclusion of Case
>
> The claimant voluntarily left without good cause in connection with the work. The information provided supports the employer's allegation the claimant voluntarily quit. The claimant is ineligible for benefits in accordance with IC 22-4-15-1.

Ex. p. 3.

On March 8, three days after the DWD issued its Determination of Eligibility, Bishop sent a letter to the DWD stating that she had never worked for Staffing Agency:

> I did not work for [Staffing Agency]. Someone worked under my name getting me disqualified for benefits. I have filed a police report. I was in the office at [Staffing Agency] to see if they could give me any information on who it may be they said no. So IMPD did do a investigation with [Staffing Agency]. And they found out it wasn't me. Last job Carrier Corp.

Ex. p. 5. Thereafter, the DWD sent to Bishop and Staffing Agency a notice of an in-person hearing to be held before an administrative law judge on March 29. *Id.* at 37.

[7] At the March 29 hearing, Bishop appeared in person, but Staffing Agency did not. The ALJ called Staffing Agency, which then participated by phone. Bishop testified that her most recent employer was Carrier, she had "[n]ever in [her] life" worked for Staffing Agency, and her identity had been stolen. Tr. p. 11. She explained that she had been robbed in December 2017 as well as "a year ago" and that her wallet had been taken. *Id*. at 11-12. Bishop also testified that she didn't receive a W-2 from Staffing Agency and therefore didn't report those wages on her taxes. Finally, Bishop testified that an IMPD detective went to the White Oaks address and told her that "an African with a heavy accent" lived there but that he needed to investigate more. *Id*. at 11.

[8] Staffing Agency testified that it hired a person by the name of Whitney Bishop in late September 2017, it placed the person at a logistics company called Geodis in Indianapolis, and the person worked full time at Geodis from October 1, 2017, to January 25, 2018, when they quit because "they [didn't] want to work there anymore." *Id*. at 14. Staffing Agency testified that the person gave the address of 2210 White Oaks Drive in Indianapolis when they applied but then called in early January 2018 to change the address to 3440 East 38th Street in Indianapolis (Bishop's address) so that the W-2 could be mailed

there.[3]  Staffing Agency acknowledged learning on March 5 that a criminal investigation was underway and said it gave Bishop the contact information of a special agent with the United States Department of Homeland Security.  The following colloquy then ensued between the ALJ and Staffing Agency:

> Q.          . . . Was the Whitney Bishop that was working for [Staffing Agency]—was she pregnant?
>
> A.          I don't believe so.
>
> Q.          Okay.  Is there anyone with [Staffing Agency] that could identify – that hired Whitney Bishop that could identify her in person?
>
> A.          I don't believe so.
>
> Q.          Is there anyone at – at Geodis that could identify the Whitney Bishop that was working for [Staffing Agency]?
>
> A.          Yes, and it's my understanding that they have been questioned by the detective as well.

*Id.* at 15.  The ALJ then stopped the hearing and ordered that it be continued because she needed more information from the parties.  The ALJ requested that "someone with [Staffing Agency] participate **in-person that has first-hand**

---

[3] Staffing Agency did not give an apartment number for 3440 East 38th Street, but Bishop said she lived in apartment B and had trouble getting her mail if her apartment wasn't listed.

**knowledge of who Whitney Bishop is**, as [Staffing Agency] believes." *Id.* at 23 (emphasis added). The ALJ explained that "the gravity of this situation requires me to fully . . . investigate to make sure I do have the correct Claimant, and if in fact this is not the correct Claimant, have further information provided to the department regarding that information." *Id.* at 24.

[9] On April 5, the DWD sent to Bishop and Staffing Agency a notice of an in-person hearing to be held on April 16. In addition, the DWD issued a subpoena to Staffing Agency commanding it "to have an employee who can identify employee Whitney Bishop appear in person" at the April 16 hearing. Ex. p. 34.

[10] At the April 16 hearing, Bishop appeared in person, but again Staffing Agency did not. The ALJ then called Staffing Agency, which said it wasn't aware of the hearing. The ALJ reminded Staffing Agency that a notice of the hearing had been mailed as well as a subpoena requiring them to appear in person to identify "the employee named as Whitney Bishop." Tr. p. 26. The ALJ explained that because "the crux of the issue is whether [Bishop] is the employee that [Staffing Agency] believes to be [Whitney Bishop] . . ., [she couldn't] go any further on the issues today." *Id*. at 27. Again, the ALJ ordered Staffing Agency to appear in person at a rescheduled hearing, which the parties agreed would be held on May 3.

[11]     At the May 3 hearing, Bishop and two employees from Staffing Agency—Emily Brower and Mallori Herbertz—appeared in person. However, neither employee could identify Bishop as the person Staffing Agency had hired.

[12]     Herbertz, who worked at Staffing Agency's front desk, testified that she did not recognize Bishop from when a person by that name applied at Staffing Agency in late September 2017; however, she did recognize Bishop from when she stopped by in March 2018 to inquire about the person who had been using her identity. Herbertz introduced into evidence copies of the two pieces of identification that the person provided during the application process: (1) a social-security card in the name of "Whitney Mychel Lyn Bishop" and (2) a State of Indiana identification card (issued in May 2016) listing the name "Whitney Lynn Bishop" and an address of 3440 E. 38th St. #B in Indianapolis. Ex. p. 69.

[13]     Brower, the branch manager, testified that she had never seen Bishop until that day. Tr. p. 44. She explained that a person by the name of Whitney Bishop worked at Geodis from October 1, 2017, to January 25, 2018, when an employee from Staffing Agency called to see why she didn't show up for work that day, and the person responded that she quit because she didn't want to work there anymore. Brower also offered into evidence five "paycheck stubs." *Id*. at 45. The paystubs reflect that the money was direct deposited. *Id*. at 46; Ex. pp. 70-74. Brower, however, did not have any information regarding the account that the money was deposited into. Brower acknowledged that the address on the State of Indiana identification card did not match the address

that the person gave; however, she explained that it is Staffing Agency's practice that "[p]eople that we put to work have to match their ID's." Tr. p. 49. As for when someone called Staffing Agency in January 2018 to change the address from White Oaks to 38th Street, Brower testified that she "couldn't verify" if the W-2 was actually mailed to the 38th Street address. *Id*. at 48. Finally, Brower introduced into evidence the I-9 Form that the person filled out when applying for the job. According to the form, the person's address was 2210 White Oaks Drive, phone number was (317) 529-[xxxx], and email address was tsy[xxxx]@gmail.com. Ex. p. 77. Notably, on the signature line, the name is signed as "Whityney Lynn," not "Whitney Bishop." *Id*.

[14] Finally, Bishop testified that she neither had a bank account nor received any paychecks from Staffing Agency. She acknowledged that the photo on the State of Indiana identification card was of her but reiterated that her wallet (including her identification card) had been stolen "[a]bout two" times, in December 2017 and 2016. Tr. pp. 51-54, 56; *see also id*. at 57 (also referencing robberies in 2005, 2007, and 2011). Bishop testified that she did not live at 2210 White Oaks Drive and instead had lived at 3440 E. 38th St. #B since March 2016. In addition, Bishop testified that after Staffing Agency gave her the contact information of the United States Department of Homeland Security special agent, she met with him at his office. *See id*. at 66-67. She did not have the results of any investigation, though. Finally, Bishop testified that her email address (since 2004) was whit.[xx]@hotmail.com, she had never had a

gmail.com email address, and her phone number (the only one she ever had) was (317) 625-[xxxx], not (317) 529-[xxxx].

[15]     On May 14, 2018, the ALJ issued her decision.  The ALJ concluded as follows:

> [Bishop] is the same employee Whitney Bishop that worked for [Staffing Agency].  The [ALJ] concludes this because [Bishop's] [identification card] was used for employment with [Staffing Agency].  This was provided prior to the theft of the driver's license in December 2017.  [Bishop] failed to provide evidence of a police report made in December 2017.  [The employee's] address was updated with [Staffing Agency] to [Bishop's] correct address in January 2018 to receive pertinent tax documents.  The [ALJ] concludes that the different address reported initially with [Staffing Agency] is not as determinative as to the address where pertinent tax documents are issued.  [Bishop] did not know how to correctly spell her middle name [Lynn v. Lyn] which may account for the different versions.  For all of those reasons, the [ALJ] concludes that [Bishop] is the same Whitney Bishop that worked for [Staffing Agency].

Appellant's App. Vol. III p. 24.  Furthermore, finding that Bishop voluntarily left employment with Staffing Agency without good cause, the ALJ affirmed the claims investigator's denial of unemployment benefits.  Bishop then appealed to the Review Board, which (without holding a hearing) adopted and incorporated by reference the ALJ's findings of fact and conclusions of law and affirmed the ALJ's decision.  Appellant's App. Vol. II p. 4.

[16]     Bishop now appeals.

# Discussion and Decision

[17] Bishop contends that the Review Board's finding that she worked for Staffing Agency is not supported by substantial evidence. When reviewing a decision by the Review Board, our task is to determine whether the decision is reasonable in light of its findings. *Abdirizak v. Review Bd. of Indiana Dep't of Workforce Dev.*, 826 N.E.2d 148, 150 (Ind. Ct. App. 2005). Our review of the Review Board's findings is subject to a "substantial evidence" standard of review. *Id.* In this analysis, we neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the Review Board's findings. *Id.* Further, we will reverse the decision only if there is no substantial evidence to support the Review Board's findings. *Id.*

[18] As the ALJ explained early on in these proceedings, Bishop's claim that she never worked for Staffing Agency was "a significant issue" that required more information to make sure "[we] have the correct Claimant." Tr. pp. 23-24. To that end, the ALJ ordered Staffing Agency to appear in person at the continued hearing with "someone . . . [who] has first-hand knowledge of who Whitney Bishop is, as [Staffing Agency] believes." *Id.* at 23. However, Staffing Agency did not appear in person at the continued hearing despite being (1) informed over the phone, (2) mailed a notice of the hearing date, and (3) issued a subpoena "to have an employee who can identify employee Whitney Bishop appear in person." Ex. p. 34. As a result, the ALJ was forced to continue the hearing again as the "crux of the issue is whether [Bishop] is the employee that

[Staffing Agency] believes to be [Whitney Bishop]." Tr. p. 27. Again, Staffing Agency was ordered to appear in person at the continued hearing.

[19] At the third hearing, employees from Staffing Agency finally appeared in person, but neither of them could identify Bishop, and they didn't subpoena or bring any witnesses from Geodis who could do so either. *See id.* at 15 (Staffing Agency testifying at the first hearing that someone from Geodis could identify the Whitney Bishop that worked for Staffing Agency). Nevertheless, the ALJ determined that Bishop was, in fact, the person who worked for Staffing Agency because Bishop's State of Indiana identification card was used for employment with Staffing Agency, and it was provided to Staffing Agency before it was stolen in December 2017. However, Bishop claimed to have had her identification card stolen other times because, as she put it, that's life in the "ghetto." *Id.* at 51. As for the ALJ's observation that Bishop didn't file a police report in December 2017, she did file a police report in March 2018 as soon as she found out that someone was using her identity. Finally, although the ALJ acknowledged that Bishop's address wasn't used during the application process with Staffing Agency, she noted that it was updated to Bishop's address in January 2018 in order "to receive the pertinent tax documents." However, not only did Bishop deny receiving a W-2 from Staffing Agency, but also Staffing Agency "couldn't verify" if the W-2 was actually mailed to the 38th Street address. *Id.* at 48. The ALJ's determination that Bishop worked for Staffing Agency is also at odds with the other evidence that was presented, including:

- After Bishop's claim for unemployment benefits based on her layoff from Carrier was denied because she quit working at Staffing Agency without reason, Bishop called IMPD to report that her identity had been stolen and someone had been working at Staffing Agency using her information.

- Bishop went to Staffing Agency to inquire about the person who had been using her identify, and Staffing Agency gave her the name of a special agent with the United States Department of Homeland Security.

- Bishop met with the special agent.

- Just three days after the DWD denied a claim by "Whitney Bishop" for unemployment benefits based on employment with Staffing Agency, Bishop sent a letter to the DWD stating that she had never worked for Staffing Agency.

- The person who applied at Staffing Agency gave an address, phone number, and email address that Bishop denied were hers.

- Although Bishop was pregnant when the person applied at Staffing Agency in late September 2017 and gave birth on February 1, 2018, Staffing Agency said the person was not pregnant "to our knowledge."

- The person who applied at Staffing Agency signed the I-9 Form as "Whityney Lynn," not "Whitney Bishop."

- Staffing Agency paid the person using direct deposit but did not have any information regarding the bank account that was used, and Bishop denied having a bank account.

Based on all of this evidence, we conclude that the Review Board's finding that Bishop is the person who worked for Staffing Agency is not supported by substantial evidence. We therefore reverse the Review Board's decision upholding the claims investigator's determination and remand this matter to the Review Board to conduct further proceedings consistent with this opinion.

[20] Reversed and remanded.

Riley, J., and Bradford, J., concur.